IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DOMINIQUE ARCHIE-WILKINS, individually and as next friend of PIERRE ARCHIE, a minor, )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE CHICAGO PUBLIC SCHOOLS and CHICAGO BOARD OF EDUCATION; DAVID VITALE, in his capacity as President of the Chicago Board of Education; JEAN-CLAUDE BRIZARD, in his capacity as the Chief Executive Officer of the Chicago Public School District, #299; and WENDY OLEKSY, in her capacity as the Principal of Jacques Marquette Elementary School, )<br><br>Defendants. ) | 2011L013904<br>CALENDAR/ROOM H<br>TIME 00:00<br>PI Other<br><br>Case no. _____ |

## VERIFIED COMPLAINT AT LAW

Plaintiff, Dominique Archie-Wilkins, on behalf of herself and on behalf of Pierre Archie, her minor child, (together, the "Plaintiff"), by and through her undersigned attorney, hereby complains against defendants, the Chicago Public Schools, the Chicago Board Of Education, David Vitale, in his capacity as President of the Chicago Board of Education, Jean-Claude Brizard, in his capacity as Chief Executive Officer of Chicago Public School District #299, (collectively, the "Defendants") and Wendy Oleksy, in her capacity as Principal of Jacques Marquette Elementary School, as follows:

### PARTIES

1. Pierre Archie ("Pierre") is a minor born October 19, 1999, is a citizen of the state of Illinois, and was at all relevant times a pupil in the Chicago Public School District attending Jacques Marquette Elementary School ("Marquette Elementary") which is part of the Chicago

1

Public Schools ("CPS") which is governed by the Chicago Board Of Education ("CBOE"). Pierre Archie qualifies as an "individual with a disability" as defined by Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act, *codified at* 29 U.S.C. § 705(20)(B).

2. Dominic Archie-Wilkins ("Ms. Archie-Wilkins") is Pierre's biological mother, residing with Pierre in the City of Chicago, County of Cook, State of Illinois.

3. The CPS and CBOE is a public school district with schools located throughout the city of Chicago, Illinois, is organized under the laws of the State of Illinois, and at all times was responsible for the implementation of relevant federal and state law, the care, management, and control of all public school activities within its jurisdiction, including with respect to students who are individuals with disabilities, the training of teachers and staff of the CPS and CBOE as to safety, and the supervision of students within the district, and for their course of study. Marquette Elementary, located Chicago, Illinois, is part of the CPS District and CBOE. The Chicago Public School District and Chicago Board of Education Main Offices are located in Chicago, Illinois.

4. David Vitale is sued in his capacity as the President of the CBOE, located in Chicago, Illinois.

5. Jean Claude-Brizard, is sued in his capacity as the Chief Executive Officer (CEO) of the Chicago Public School District #299 also located in Chicago, Illinois

6. Wendy Oleksy is sued in her capacity as the principal of Marquette Elementary, in Chicago, Illinois, during all times relevant to this complaint.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper before this Court pursuant to 735 ILCS 5/2-101, as all Defendants are employed and carry on their job responsibilities within the state of Illinois, in Cook County, and the events or transactions that gave rise to Plaintiff's claims occurred in Cook County, Illinois.

## FACTUAL BACKGROUND

8. On June 28, 2010, the Illinois School Code was amended to provide specific guidance for bullying prevention in schools. Among other findings, the Illinois Legislature acknowledged that:

> [a] safe and civil school environment is necessary for students to learn and achieve and that bullying causes physical, psychological, and emotional harm to students and interferes with students' ability to learn and participate in school activities.

105 ILCS 5/27-23.7.

9. The Chicago Public School District Policy Manual, adopted on July 28, 2010, includes a specific "Anti-Bullying Policy," which states in part:

> The Chicago Public Schools prohibits any and all forms of bullying by students and will not tolerate acts of retaliation for making a report of bullying.
>
> School staff shall identify and stop bullying behavior and refer perpetrators for appropriate discipline in accordance with this Student Code of Conduct.

Chicago Public Schools Policy Manual, §705.5.

10. The Chicago Public Schools Student Code of Conduct classifies "battery, or aiding or abetting in the commission of a battery, which results in a physical injury" as a "Group 5" or "Most Serious" disruption to the "orderly education process." Student offenders that commit this type of disruption "*shall* be suspended for five to ten days and may be referred for expulsion or disciplinary reassignment." [Emphasis added.] Furthermore, schools are required to

notify the police of any incidences of battery that result in injury. *See* Chicago Public Schools Student Code of Conduct, Group 5 – Inappropriate Behaviors.

11. On or about September 1, 2010, Marquette Elementary hosted an open house where, among other topics discussed, school officials informed parents that Marquette Elementary had a "zero tolerance" policy for fighting on school grounds.

12. In September 2010, Pierre Archie ("Pierre") transferred to Marquette Elementary to begin as a fifth grade student.

13. Around the time of his transfer, CPS recognized that Pierre had an attention deficit disorder / bi-polar disability and granted him a "504 Plan" pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, *codified at* 29 U.S.C. § 705(20)(B). A true and correct copy of Pierre's 504 Plan is attached hereto as Exhibit A.

14. On or about September 30, 2011, Ms. Archie-Wilkins received a call from Pierre's fifth grade teacher at Marquette Elementary who is an employee and agent of the Defendant, Ms. Bryar, informing her that Pierre had been involved in what she called a "classic bullying situation." According to Ms. Bryar, a female student in Pierre's class had pushed Pierre down, hit him in the eye, and called him names repeatedly, but that Pierre had not retaliated. Ms. Bryar explained to Ms. Archie-Wilkins that Pierre was in the nurse's office and, although he wanted to go home, he "was fine."

15. The very next day, soon after Ms. Archie-Wilkins arrived at Marquette to pick up Pierre, she witnessed a boy in Pierre's class walk up behind Pierre and strike Pierre with closed fists approximately four times. Ms. Archie-Wilkins approached the boy and asked him why he had hit Pierre. The boy responded he hit him because Pierre "can't fight."

4

16. On or about October 2, 2010, Ms. Archie-Wilkins reported the incidents described in Paragraphs 14 and 15 to Mr. Wayne Sagotz, Marquette Elementary's "Disciplinarian" who is also and employee and agent of the Defendant. Based on her conversation with him, she had reason to believe that Mr. Sagotz had not yet been notified of the September 30th bullying incident. When Ms. Archie-Wilkins informed Mr. Sagotz about the incident, he advised Ms. Archie-Wilkins to "be aware of the bullying situation around the world," and to tell Pierre to "start fighting back" to protect himself.

17. Between approximately October 2, 2010 and January 31, 2011, Mrs. Archie-Wilkins has reason to believe that Pierre suffered from several isolated incidents of bullying at Marquette Elementary.

18. Between approximately October 2010 and January 31, 2010, Ms. Archie Wilkins brought Pierre to a therapist regularly in part to work on coping strategies while being bullied.

19. On or about January 31, 2011, Pierre was "jumped" in the Marquette Elementary bathroom by a group of fifth grade students. During this incident, one student grabbed Pierre from behind, put him in a head lock, choked him, and held him down, while at least two other children kicked him in the scrotal region approximately seven times, and two or three other students watched from the sidelines (the "January 31st attack").

20. Immediately after this bathroom attack, Ms. Bryar was informed of this attack, but Pierre was not sent to the nurse's office and Ms. Archie-Wilkins did not receive a telephone call from the school about this attack. Plaintiffs have reason to believe that the police were not notified and Mr. Sagotz was not notified.

21. Rather, after the January 31st incident, Ms. Bryar, Pierre's teacher, sent a note home to Ms. Archie-Wilkins, stating:

5

Pierre was threatened by a student in the bathroom. He began to defend himself, resulting in "rough housing" in the bathroom. I talked to him and other involved about safe and respectable behavior in the bathroom. Please speak to him about safe and respectable behavior.

22. Immediately after Pierre told Ms. Archie-Wilkins what had happened during the January 31st incident, Ms. Archie-Wilkins took Pierre to the Community Access Clinic within the school. The nurse examined him immediately and strongly suggested that Ms. Archie-Wilkins take him to the Emergency Room for an ultrasound. She wrote a referral stating that Pierre "was kicked in the scrotum seven times forcefully by three peers. Testicular pain, please evaluate." A true and correct copy of the referral is attached hereto as Exhibit B. Immediately thereafter, Ms. Archie-Wilkins took Pierre to the emergency room at the University of Chicago, where Ms. Archie-Wilkins and Pierre stayed overnight in order for Pierre to be checked for long-term scrotal damage.

23. On or about February 1, 2011, Ms. Archie-Wilkins took a day off work to meet with the Marquette school principal, Wendy Oleksy, to discuss the bathroom incident. However, Ms. Oleksy was out sick that day and the assistance principal, Rodolfo Rojas, was out of the school for the day in meetings.

24. On or about February 1, 2011, Ms. Archie-Wilkins met with to Mr. Sagotz to discuss the bathroom incident. During the meeting, Mr. Sagotz told Ms. Archie-Wilkins that he was unable to discuss the bullying children's punishments with her, and she would not be allowed to participate in a parent conference with the bullies' parents to discuss the January 31st attack.

25. On or about February 4, 2011, Ms. Archie-Wilkins met with Ms. Oleksy, and employee and agent of the Defendant and Mr. Sagotz to discuss the bathroom incident. During this meeting, Ms. Oleksy offered to set up a problem-based program in two to three weeks from

the date of the meeting, at which a professional would come in to speak to the parents and children involved in the bathroom incident about solutions and problem-solving. Ms. Archie-Wilkins agreed to participate in Ms. Oleksy's proposed program, but also stated that she wished to file a police report of the January 31st incident.

26. Plaintiff's have reason to believe that Ms. Oleksy's proposed program as described in paragraph 25 never occurred.

27. On February 4, 2011, shortly after the meeting between Ms. Archie-Wilkins, Principal Oleksy, and Mr. Sagotz, Ms. Archie-Wilkins called the police and made a police report of the incident.

28. On that same day, the police visited Marquette Elementary in response to Ms. Archie-Wilkins's phone call. Ms. Archie-Wilkins described the January 31st incident, and the police informed her that the students involved would have to be suspended. However, after speaking with the school administration, the police informed Ms. Archie-Wilkins that all of the students involved, including Pierre, would have to be suspended.

29. On that same day, after speaking with the police, Ms. Archie-Wilkins called the Chief Area Office (CAO) for Chicago Public Schools on the Southwest side of Chicago, Jessica Romando, an employee and agent of the Defendant, and filed a report of the incidence. Ms. Romando told Ms. Archie-Wilkins that the CAO would look into the incident, and she would receive a phone call from the CAO the following Monday, February 7. No such phone call was ever received.

30. On February 8, 2011, Ms. Archie-Wilkins called the CAO's office for an update and spoke to Ms. Romando again. Ms. Romando had not yet received a response from Mr. Sagotz, but stated that she would contact him immediately and call her back in twenty minutes.

Ms. Romando called her back as promised and told her that the Marquette Elementary would be setting up "P Circles" wherein the students involve would discuss problem-solving strategies and that, although Pierre had no history of disciplinary problems himself, he could elect to work with a mentor.

31. Plaintiff has reason to believe that these "P-Circles" were never scheduled, and Ms. Archie-Wilkins heard nothing further from the school regarding her report to the CAO of the January 31, 2011 Incident.

32. On March 31, 2011, while Pierre was jumping rope with three male students, the students caught him in the jump rope, entangled the rope around his neck, and dragged him across the floor by the rope (the "March 31, 2011 attack").

33. After the March 31, 2011 Incident, Pierre reported the incident to a Mr. Eddie, the advisor for Marquette's "Homework Corner" program and an employee and agent of the Defendant, who told Pierre merely to stop playing with the boys.

34. Plaintiff has reason to believe that the police were never notified by the school of the March 31, 2011 attack.

35. On April 1, 2011, a gang of boys threatened to harm Pierre after school. Pierre reported the threat to his teacher, Ms. Bryer. To Plaintiff's knowledge, MsBryer did not report the threat to Mr. Sagotz or Ms. Oleksy.

36. Also on April 1, 2011, Pierre was sent to the school clinic for ice treatments for a swollen finger, which had been caused by the March 31, 2011 attack. Pierre stayed at the clinic until Ms. Archie-Wilkins picked him up that afternoon.

37. Also on April 1, 2011, a student familiar with the bullying came to visit Ms. Archie-Wilkins' house to tell her that Pierre was in danger of being seriously hurt. In response,

Ms. Archie-Wilkins contacted Ms. Oleksy to review the bullying incidents of the year, to express her concern about the safety of her son, and to point out that the proposed solution, "P-Circles", had never been done She also inquired about the school's plan to protect Pierre.

38. On or about April 4, 2011, Ms. Oleksy responded to Ms. Archie-Wilkins' email, stating that she had been out of town for a conference and would like to discuss her concerns over the phone.

39. On or about April 6, Principal Oleksy, an employee and agent of the Defendant, asked Ms. Archie-Wilkins to come to the office at 8:30 a.m. the next day to schedule the P-Circles.

40. On or about April 7, 2011, Ms. Archie-Wilkins visited the Marquette Elementary office to schedule the P-Circles as she had discussed with Principal Oleksy. Ms. Archie-Wilkins was forced to wait for over an hour and ended up having to leave to return to work without having spoken to anyone. She left a note at the office asking for the school to please contact her by email or phone to schedule the P-Circles.

41. Ms. Archie-Wilkins did not hear from the school again until May 3, 2011, and the Plaintiff has reason to believe that the proposed P-Circles were never scheduled.

42. Pierre continued to be harassed by other students during the months of April and May of 2011. Ms. Archie-Wilkins informed Principal Oleksy of the continued harassment. Again, no meeting or "P-Circles" and Plaintiff has reason to believe that no interventions were scheduled in response to Ms. Archie-Wilkins expressed concerns. On or about June 1, 2011, Pierre wrote a letter (the "Suicide Letter"), attached hereto as Exhibit C, stating in part as follows:

> I wish I was dead!!!! Because I hate going to school and getting into fights and getting beat up and no one does anything about it and soon I will kill myself maybe tonight or very soon!!

43. On or about June 2, 2011, Ms. Archie-Wilkins reported the suicide letter to Principal Oleksy and Mr. Sagotz. Principal Oleksy referred Pierre to the school's counselor, Ms. Berg, and Pierre met with Ms. Berg, an employee and agent of the Defendant.

44. On or about June 3, 2011, Ms. Archie-Wilkins spoke to Ms. Berg over the phone about the counseling session with Pierre. Ms. Berg stated she did not think Pierre was suicidal, but that he had admitted to thoughts of stabbing himself with scissors and jumping out the window.

45. As a result of the suicide letter and suicidal thoughts conveyed to Ms. Berg, Ms. Archie-Wilkins admitted Pierre into the children's psychiatric ward of St. Elizabeth Hospital in Chicago, Illinois, where he stayed for a total of ten days. A true and correct copy of the discharge summary is attached hereto as Exhibit D.

46. As a result of all of the incidents described above, Ms. Archie-Wilkins decided to transfer Pierre again out of Marquette Elementary and into a different elementary school for the sixth grade.

47. Between August 1, 2011 and September 29, 2011, Ms. Archie-Wilkins made approximately three requests for copies of Pierre's school records.

48. Despite her requests, Ms. Archie-Wilkins did not receive any of Pierre's school records until on or about September 29, 2011.

49. The school records provided to Ms. Archie-Wilkins did not include any documentation of the bullying incidents, Ms. Archie-Wilkins' follow-up with the school

regarding the bullying incidents, nor any documentation showing how school personnel handled the incidents in the 2010-2011 school year.

## COUNT ONE
## WILLFUL AND WANTON MISCONDUCT
### (Against all Defendants)

50. Ms. Archie-Wilkins restates and realleges paragraphs 1 – [50] as if fully set forth herein.

51. The Defendants' failure to respond to the many known and acknowledged threats to and physical attacks upon Pierre over the course of the 2010 – 2011 school year constituted a conscious disregard for Pierre's safety and allowed the bullying incidents to continue undeterred over the course of the entire school year.

52. The inaction by the Defendants and its agents and employees violated the district's own, non-discretionary policies as set forth in paragraphs 8 through 10 of this complaint.

53. The Defendants' conduct constitutes willful and wanton misconduct under the laws of the State of Illinois.

54. The Defendants' willful and wanton misconduct caused Pierre to suffer both physical and emotional distress, resulting in physical and psychological injuries, including extended stays in hospitals and other medical costs.

55. Ms. Archie-Wilkins. mother of the minor Pierre has assigned, transferred and relinquished to the minor Plaintiff her rights to recover any monies expended and incurred and to be expended and incurred for such medical and hospital expenses and services as may be required by the minor Plaintiff; and has assigned, transferred and

relinquished to the minor Plaintiff her rights to recover for any lost earnings and wages during the minority of the minor Plaintiff.

WHEREFORE, Plaintiffs, Dominique Archie-Wilkins and Pierre Archie request this Court enter the following relief:

A. Award compensatory damages in an amount not less than $50,000;

B. Award costs and attorney's fees.

C. Award other such relief as the Court deems proper and just.

## COUNT TWO
## VIOLATIONS OF SECTION 504 OF THE
## REHABILITATION ACT OF 1973, 29 U.S.C. §794
### (Against all Defendants)

56. Ms. Archie-Wilkins restates and realleges paragraphs 1 – 56 as if fully set forth herein.

57. Section 504 [?] requires schools that receives federal funding to ensure that all students with disabilities are provided appropriate and necessary accommodations, pursuant to federal laws and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that student and keep him safe, it violates Section 504.

58. The Defendant School District receives federal financial assistance.

59. Pierre is a student with a disability under Section 504.

60. Because the School District failed to provide appropriate accommodations and supports that would keep him safe from harm, such failures violated his rights under Section 504.

WHEREFORE, Plaintiffs, Dominique Archie-Wilkins and Pierre Archie request this Court to enter the following relief:

A. Award damages in an amount not less than $50,000.

B. Award costs and attorney's fees.

C. Award other such relief as the Court deems proper and just.

## COUNT THREE – VIOLATION OF §1983 AND THE 14TH AMENDMENT OF THE U.S. CONSTITUTION

61. Plaintiffs, Dominique Archie-Wilkins and Pierre Archie restate and reallege paragraphs 1 – 61 as if fully set forth herein.

62. 42 U.S.C. § 1983 provides in pertinent part that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States, or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

63. The Defendants acted, and failed to act, under the color of state law, in furtherance of their duties through their employees and agents by failing to address a clear safety threat to Pierre, the Defendants' actions and inactions directly caused severe physical harm to Pierre and physical and emotional harm to Pierre and Ms. Archie-Wilkins.

64. The Defendants' actions constituted a deliberate indifference to Pierre and his family's 14th Amendment rights to protections against deprivation of life, liberty, or property, causing Pierre and his family severe physical and emotional harm.

WHEREFORE, Plaintiffs, Dominique Archie-Wilkins and Pierre Archie request that this Court enter the following relief:

D. Award damages in an amount not less than $50,000.

E. Award costs and attorney's fees.

F. Award other such relief as the Court deems proper and just.

Respectfully Submitted,

_____  _____
Andrea M.B. Ott                   Dominique Archie-Wilkins

Law Offices of Andrea M.B. Ott, LLC
1111 South Blvd.
Oak Park, Illinois 60302
708.524.1046
Attorney no. 48363

*Attorney for Dominique Archie-Wilkins and Pierre Archie*

### 1-109 VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____  _____
Dominique Archie-Wilkins          Pierre Archie

Law Offices of Andrea M.B. Ott, LLC
1111 South Blvd.
Oak Park, Illinois 60302
708.524.1046
Attorney no. 48363
*Attorney for Dominique Archie-Wilkins and Pierre Archie*